**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**DAVID M. O'BRIEN,**

                    **Petitioner**

**v.**

**JOSEPH J. COSTELLO, in his**
**official capacity as Superintendent,**
**Mid-State Correctional Facility,**                    **11-CV-956(Sr)**

                    **Respondent**

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

                    This matter was referred to the undersigned by the Hon. William S.

Skretny, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #19.


                    Petitioner, David M. O'Brien, an inmate of the New York State Department

of Corrections, commenced this proceeding pursuant to 28 U.S.C. § 2254, challenging

his conviction following a jury trial before the Hon. Richard C. Kloch, Sr., Acting Justice

of the Supreme Court, Cattaraugus County, of one count of vehicular manslaughter,

second degree, in violation of New York State Penal Law § 125.12(1); one count of

criminally negligent homicide, in violation of New York State Penal Law § 125.10; one

count of driving while intoxicated, in violation of New York Vehicle and Traffic Law

§ 1192.3; and one count of driving while intoxicated *per se*, in violation of New York

Vehicle and Traffic Law § 1192.2.  For the following reasons, it is recommended that the petition be denied.

## **BACKGROUND**

Petitioner and his wife, Wendy, arrived at Moonwink's Restaurant in Cuba, New York, between 6:30 and 7:00 p.m. on April 26, 2008 to attend a United Way fundraiser with friends, Todd and Geri Perrigo and Dana and Karen Perrigo. Petitioner's wife, Wendy, is a bartender at Moonwink's.  Petitioner admits to drinking three or four pints of Yuengling draft beer and the bartenders at Moonwink's recall serving petitioner three pints of Yuengling.  Petitioner ate a full dinner of salad, beef, baked potato and asparagus.

At approximately 10:00 p.m., petitioner left Moonwink's Restaurant to drive to work at the Salamanca Casino.  Petitioner got off at the wrong exit of Route 86 and entered the wrong lane of the 219, heading south in the northbound lane of travel. He proceeded approximately a half mile, under the Route 86 bridge, before encountering a truck which swerved out of the way of petitioner's vehicle.  A Chevy Metro traveling behind the truck collided head on with petitioner's vehicle, resulting in the death of the driver, Wendy Karnes.  Petitioner testified that he must have fallen asleep.

A truck driver who came upon the scene shortly after the accident conversed with petitioner and stood within three feet of him but did not notice any signs

of intoxication. When Cattaraugus County Sheriff Deputy Richard Love approached petitioner at the scene, petitioner informed Deputy Love that he was a retired New York State Police Investigator and continued to talk on his cell phone.  Deputy Love noticed the odor of alcohol on petitioner, as well as glassy eyes and slurred speech.

Petitioner declined examination from the Emergency Medical Technicians on scene.  Lucinda Clancy and Dianne Crowley, Emergency Medial Technician's from the Limestone Volunteer Fire Department, smelled alcohol on petitioner.  Ms. Clancy opined that petitioner was intoxicated.  Rebecca Warren, who had recently completed her EMT training, was about a foot away from petitioner as Ms. Crowley attempted to examine him but did not smell alcohol or observe glassy eyes on petitioner.  Retired New York State Trooper Patrick Mooney is a member of the Limestone Volunteer Fire Department and drove the ambulance to the scene.  After petitioner was examined by the EMT's, Mr. Mooney walked up to the window of the passenger seat of the patrol car and engaged in conversation with petitioner, with whom he had previously worked, and denied observing any signs of intoxication.

Cattaraugus County Sheriff's Department Detective Nathan Root arrived at the scene at approximately midnight.  He smelled alcohol on petitioner and observed him stumble and hang on to the door as petitioner exited the patrol car several times to relieve himself.  Deputy Root opined that petitioner was intoxicated.

Cattaraugus County Sheriff's Deputy Matt Rogan transported petitioner to Olean General Hospital where petitioner consented to a blood draw which occurred at approximately 1:45 a.m.  Thereafter, Deputy Love and Deputy Rogan directed that petitioner perform several field sobriety tests, including the horizontal gaze nystagmus test, which indicated intoxication.  The emergency room physician who examined petitioner observed no signs of intoxication and did not observe nystagmus.

Petitioner was arrested for Driving While Intoxicated at approximately 2:25 a.m.  The blood sample revealed a blood alcohol content of .11 percent by weight.  A prosecution expert conducted a retrograde extrapolation which suggested a range of .14 to .185 percent by weight at the time of the accident.  A defense expert testified that the prosecution's retrograde extrapolation did not properly account for the large meal petitioner consumed, which would delay absorption of the alcohol, suggesting a blood alcohol content of .06 percent by weight at the time of the accident.

Petitioner was found guilty of all charges and sentenced principally to an indeterminate term of one to seven years of incarceration.  Petitioner appealed to the New York State Supreme Court, Appellate Division, Fourth Department, arguing, *inter alia*, that the trial court erred in precluding him from calling character witnesses to testify to his reputation for sobriety and truthfulness, thereby denying him a fair trial and due process as provided by the New York and United States Constitution.  Dkt. #8-5, p.134. At jury selection, defense counsel advised that petitioner sought to produce Cattaraugus County Court Judge Nenno and Cattaraugus County Court Judge Himelin

to opine as to petitioner's reputation for sobriety.  Judge Kloch denied the witnesses,

explaining:

>As you know, both of those judges recused themselves in
>regard to the handling of this case.  And it's been apparent
>from the proof that has been received in this court,
>according to what my view of it is, it's not a question as to
>whether or not . . . Mr. O'Brien consumed some alcohol on
>the day in question.  Defense's proposition is that it wasn't of
>sufficient quantity over the requisite period of time to render
>him intoxicated . . . and that's really the issue.
>
>Now, in dealing with character evidence my initial concern
>when you brought it up was to the relevancy of it in regard to
>this particular case.  And, just to indicate my – my findings
>on it and my belief on it, I have read case law that you
>submitted to me.  I've read other case law in addition to that,
>Mr. Cosgrove, and I am relying heavily, as well, on New York
>Evidence by Martin Capra . . .  and Rossi.  I'm referencing
>section 4.8 which deals with the relevancy of character
>evidence.
>
>* * *
>
>We go on as to character is generally inadmissible to prove
>consistent conduct.  Circumstantial – and this is 4.8.2 of the
>same treatise of law.  "Circumstantial use of character
>evidence is generally barred, first, because propensity is
>thought to have little probative value with respect to
>particular conduct.  Common experience teaches that
>people often do not act consistently with their character.
>Second, character evidence is often prejudicial.  This is true
>especially in criminal cases where evidence that the
>accused has a nefarious propensity may be used improperly
>to convict for being a bad person, rather than for having
>committed the charged crime."  I'm gonna end it there.  This
>is particularly relevant to myself.  Mr. O'Brien's character is
>not on trial here.  His acts as they occurred on this particular
>day in April of 2008 are what is being litigated here.  As
>indicated, the circumstantial evidence of his character would
>have little probative value.  It also provides for the opening
>up of collateral attacks of that proof.  So I would be dealing
>here with a litany of cases that I would allow the prosecution
>to bring in, if in fact, I allowed you to bring in two judges from

the county to testify as to his reputation in the area as far as sobriety. I would allow the People pretty *carte blanche* to bring in other witnesses to say that they saw him drinking, or under the influence or inebriated. And now instead of looking at an isolated sad day in April 2008 we would be examining a date in 2007, in 2006, in 2005 and on, and on, and on. With the obvious confusion that could case to the trier of fact, to the obvious very poor probative value of any of that proof in regard to the prejudice.

I also note for the record that the use of two judges sitting in the County Court within the county where the trial is, who have again recused themselves, I think provides for more prejudicial impact of that proof than probative value. I note your exception for the record, but I would bar your offer of Judge Himelin or Judge Nenno in regard to the reputation of Mr. O'Brien in the area as to sobriety.

Dkt. #8-4, pp.265-69. The Fourth Department affirmed the trial court, stating:

Defendant contends for the first time on appeal that County Court erred in precluding him from calling two sitting judges as character witnesses to testify concerning his reputation for "truthfulness" or "honesty" and thus that contention is not properly before us (*see* CPL 470.05[2]). In any event, defendant's contention is without merit (*see People v Sullivan*, 177 AD2d 673, *lv denied* 79 NY2d 864). Although defendant preserved for our review his further contention that the court erred in precluding him from calling those judges as character witnesses to testify concerning his reputation for "sobriety," we conclude that defendant's contention lacks merit inasmuch as the probative value of such testimony was "substantially outweighed by the danger that it [would] unfairly prejudice the [prosecution] or mislead the jury" (*People v Scarola*, 71 NY2d 769, 777).

*People v. O'Brien*, 77 A.D.3d 1445 (4th Dep't 2010). The Court of Appeals denied leave by order entered November 9, 2010. *People v. O'Brien*, 15 N.Y.3d 923 (2010).

By Notice of Motion dated December 11, 2009, petitioner sought to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10 based upon

allegations that a prosecution witness, Lucinda Clancy, had improper contact with several members of the jury on June 5, 2009.  Dkt. #8-5, p.173.  Petitioner submitted an affidavit from Catherine Fraser stating that she was standing at the picnic table to the left of the front entrance of the courthouse with petitioner, his wife, Wendy, and their friends, Todd, Geri and Dana Perrigo, Karen Perrigo, Paul and Lorna Thornbury and the general manager of Moonwinks, Steven Hollowell, during the luncheon recess on June 5, 2009, when she observed Lucinda Clancy walk down the sidewalk to Court Street and join three women jurors in conversation for approximately 5-10 minutes while smoking.  Dkt. #8-5, pp.177-78.  Subsequently, Geri Perrigo submitted an affidavit stating that she was having lunch with her husband, Todd Perrigo, petitioner and his wife, Wendy O'Brien, Catherine Faser and others when petitioner's wife pointed out Lucinda Clancy as a witness for the prosecution and Catherine Fraser directed the group's attention to Ms. Clancy and indicated that she was conversing with jurors.  Dkt. #8-5, pp.186-87.  When Ms. Perrigo took the witness stand, she recognized the women she saw outside with Ms. Clancy as jurors.  Dkt. #8-5, p.187.  Petitioner's wife, Wendy O'Brien submitted a similar affidavit indicating that Catherine Fraser directed the group's attention to Ms. Clancy and indicated that she was conversing with jurors.  Dkt. #8-5, pp. 188-89.

        At a hearing on January 1, 2010, Judge Kloch inquired of Lucinda Clancy and the three jurors as to any contact on June 5, 2009.  Dkt. #8-5, pp.191-295.  Ms. Clancy denied speaking with any jurors, stating:

> I remember a circumstance where I was having a cigarette
> at the designated smoking area and there were three

women standing there.  They were having a conversation
standing in a triangle amongst themselves and I stood on
the opposite side of the sidewalk and had my cigarette.

I only had maybe two or three puffs off of the cigarette and I
saw a juror's badge, did not recognize them as jury
members from the actual case, but I did know that being a
jury member I was not allowed to speak to them.

Dkt. #8-5, pp.198-99. Ms. Clancy testified that she turned towards the building when

she recognized the juror's badge.  Dkt. #8-5, p.200.


The first juror identified as being in the group of three recalled that she

was at a picnic table with two women who were not involved with the trial and testified

that she did not smoke and "wouldn't want to stand with smokers."  Dkt. #8-5, pp.215-

16.  She denied having any conversation with any witness during the course of the trial.

Dkt. #8-5, p.216.


The second juror identified as being in the group of three testified that she

was at a picnic table with the other two jurors and two women who were not involved in

the trial and then went to the smoking area to have a cigarette with the third juror,

leaving the first juror alone at the picnic table because "she doesn't smoke.".  Dkt. #8-5,

pp.225-27.  She did not recall anyone else present in the smoking area at that time.

Dkt. #8-5, p.228. She denied speaking with anyone other than the third juror in the

smoking area.  Dkt. #8-5, pp.230-231.

The third juror identified as being in the group of three also denied any contact or conversation with Ms. Clancy or any other witness in the designated smoking area.  Dkt. #8-5, pp.234-35.

Karen Perrigo, an attorney and certified public accountant, testified that she arrived at the courthouse to testify at trial and after determining that she would not be called before lunch, went with her husband to the grocery store a few blocks away and returned to the courthouse to eat lunch at the picnic table. Dkt. #8-5, pp.249-51. When the trial recessed, other people that she knew from the trial went to get lunch and ate it at the picnic table.  Dkt. #8-5, p.251.  Ms. Perrigo then recalls

> Kathy Fraser mentioning to Wendy that those were jurors down at the sidewalk, which I was unaware of that at the time because I had not been inside yet, and also one of the parties that was standing there with these group of jurors was one of the witnesses.  Once again I was unaware that she was a witness because I had not been in the courthouse yet.
>
> * * *
>
> And Kathy mentioned it to Wendy that this was a very important issue and that she needed to be sure that she made her attorney aware that there was a juror talking with one of the witnesses.

Dkt. #8-5, p.251.  Ms. Perrigo testified that she observed individuals standing together at the end of the sidewalk.  Dkt. #8-5, p.252.  She further stated that she observed Ms. Clancy "smoking and it appeared that they were having some type of conversation." Dkt. #8-5, p.253.  Ms. Perrigo clarified that she "saw them standing at the end of the sidewalk together" but could not say "for sure" if they were talking to one another."  Dkt. #8-5, p.255.

Catherine Fraser testified that she "was positive" there were three jurors talking with Ms. Clancy in the smoking area.  Dkt. #8-5, pp.263 & 268-69.  She explained that "[t]hey were standing there smoking and their lips were moving as far as I could see."  Dkt. #8-5, p.267.  Although she was volunteering for defense counsel and taking notes for the defense throughout the course of the trial, she did not report her observations to defense counsel.  Dkt. #8-5, pp.260-271.

Judge Kloch declined to hear testimony from Steve Hollowell, Wendy O'Brien, petitioner, Geri Perrigo and Paul and Lorna Thornbury, explaining:

> It will be cumulative.  I have their affidavits. I know what they're going to say.
>
> Based on the credible evidence I find no improper or prejudicial conduct which requires a reversal of the judgment of conviction.
>
> I give full credence to the juror's testimony as they testified here in court.
>
> I note specifically in regard to the foreperson of our jury . . . that she indicated she is not a smoker, in fact seemed to be repulsed by smoking.  She was certainly not at the curb smoking as she indicated here through her testimony, and her reaction to being with smokers and taking a smoking break.
>
> I give credence to the juror's testimony that they had no conversation with any witness that appeared and testified in this trial.  That any contact that they had with anybody had no affect on their verdict or deliberations.
>
> To grant this motion would be to label those jurors who all came and did their duty and had no interest in the case and deliberated for a while and came back with a guilty verdict, to do otherwise would be to call them liars and I don't think they're liars.

Dkt. #8-5, pp.273-274. The New York State Supreme Court, Appellate Division, Fourth

Department denied petitioner's motion for a certificate granting leave to appeal for lack

of any question of law or fact which ought to be reviewed by the Court.  Dkt. #8-5,

p.295.


## DISCUSSION

**AEDPA Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"),

where a state court has adjudicated the merits of a petitioner's claim, relief may not be

granted unless the state court's adjudication:

> (1)  resulted in a decision that was contrary to, or involved
>       an unreasonable application of, clearly established
>       Federal law, as determined by the Supreme Court of the
>       United States; or
>
> (2)  resulted in a decision that was based on an
>       unreasonable determination of the facts in light of the
>       evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).


The amended standard of § 2254(d)(1) requires the federal court to give

considerably more deference to the state court's legal determinations than did the pre-

AEDPA standard.  As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a
> federal *habeas* court to grant a state prisoner's application
> for a writ of *habeas corpus* with respect to claims
> adjudicated on the merits in state court. . . . Under the
> "contrary to" clause, a federal *habeas* court may grant the
> writ if the state court arrives at a conclusion opposite to that

> reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set
> of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal *habeas* court
> may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J.); *see Sacco v. Cooksey*,

214 F.3d 270, 273 (2d Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001).  Thus, a federal

court may only grant *habeas* relief where the state court's application of clearly

established federal law was not only erroneous, but objectively unreasonable.  *Williams*,

529 U.S. at 409; *see Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot

grant relief under AEDPA by conducting our own independent inquiry into whether the

state court was correct as a *de novo* matter.").


**Exhaustion**

Before a federal court can address the merits of any federal issue

contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted

the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999).  "Exhaustion of state remedies

requires presentation of the claim to the highest state court from which a decision can

be obtained." *Hogan v. Ward,* 998 F. Supp. 290, 293 (W.D.N.Y. 1998), *citing Daye v.*

*Attorney General of the State of New York,* 696 F.2d 186, 190 n.3 (2d Cir. 1982); *see*

*O'Sullivan*, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state

supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the

exhaustion requirement.").

In the instant case, the New York State Court of Appeals denied petitioner's appeal of the Appellate Division, Fourth Department's affirmance of the trial court's determination not to allow character evidence as to petitioner's reputation for sobriety and the Appellate Division, Fourth Department denied petitioner's motion for a certificate granting leave to appeal the trial court's determination that there was no juror misconduct.  As a result, petitioner has exhausted both of the claims presented in his petition for writ of *habeas corpus*.

**Character Evidence**

Petitioner argues that he was denied his right to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, by the trial court's determination not to allow character evidence as to his reputation for sobriety. Dkt. #1, ¶ 7.

To rise to the level of constitutional error sufficient to warrant issuance of the writ of *habeas corpus*, petitioner must demonstrate that an erroneous state court evidentiary ruling deprived him of a fundamentally fair trial.  *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir.2004); *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.1983); *See Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988) ("erroneous evidentiary rulings do not automatically rise to the level of constitutional error."); *Cf. Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) (erroneous exclusion of evidence amounts to constitutional error if it deprives the defendant of a fundamentally fair trial). To reach this standard,

the excluded evidence must be material, such that it creates a reasonable doubt as to petitioner's guilt that did not otherwise exist. *U.S. v. Jiminez,* 458 F.3d 130, 146 (2d Cir. 2006)*, citing United States v. Agurs*, 427 U.S. 97, 112-13 (1976). As the Supreme Court has oft repeated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

It is well established as a matter of both state and federal law that an accused may introduce evidence as to his own good character to show that it is unlikely that he committed the particular offense charged. *People v. Aharonowicz*, 71 N.Y.2d 678, 681 (1988); *People v. Bouton*, 50 N.Y.2d 130, 138-39 (1980); *Edington v. U.S.*, 164 U.S. 361, 363-64 (1896). "Character evidence is not directly connected to the fundamental question as to whether the defendant is guilty or not guilty of the charged crime," but is "admissible principally to show that, because of his or her good reputation, the defendant is less likely to have committed the charged crime." *United States v. Pujana-Mena*, 949 F.2d 24, 30 (2d Cir. 1991). The rationale for permitting a defendant to introduce evidence of his good character is "based on notions of fairness rather than logic; the defendant who, with the considerable forces of the government arrayed against him and who may have little more than his good name to defend himself, should not be precluded from presenting even such minimally probative evidence." *U.S. v. Han,* 230 F.3d 560, 564 (2d Cir. 2000), *quoting Pujena-Mena*, 949 F.2d at 30.

"A defendant's right to present relevant evidence is not, however, unlimited; rather it is subject to 'reasonable restrictions.'" *Wade v. Mantello*, 333 F.3d

51, 58 (2d Cir. 2003), *quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998). Although the constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *See Wade*, 333 F.3d at 58 ("The power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled.").

In assessing the propriety of a trial court's evidentiary ruling, the *habeas* court must afford the trial court wide latitude to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice or confusion of the issues. *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986); *See Gueits v. Kirkpatrick*, 612 F.3d 118, 127 (2d Cir. 2010) (noting "broad discretion available to a trial court in properly balancing the probative value of proffered evidence against the risks of confusion and prejudice"); *People v. Scarola*, 71 N.Y.2d 769, 777 (1988) ("Even where technically relevant evidence is admissible, it may still be excluded by the trial court in the exercise of its discretion if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury."). In *Wade v. Mantello*, for example, the Court of Appeals for the Second Circuit affirmed the denial of *habeas* relief where the state court excluded testimony after balancing prejudice versus probative value. 333 F.3d at 62.

In the instant case, the trial court's determination to exclude the character witnesses was well within its discretion and cannot be deemed erroneous as a matter of New York law.  As the trial court noted, evidence of petitioner's reputation for sobriety would have limited probative value in light of petitioner's admission that he consumed three or four pints of beer on the night in question. Given that the proposed character witnesses were the two county trial judges, each of whom had recused themselves from this criminal case due to their relationship with the petitioner, Judge Kloch's concern that their appearance as character witnesses on behalf of petitioner would be prejudicial to the prosecution cannot be deemed unreasonable. Moreover, the potential for confusion of the issues was great, as character evidence of petitioner's reputation for sobriety would open the door to testimony regarding petitioner's proclivity for intoxication, thereby distracting from the central issue, *to wit*, whether petitioner was intoxicated at the time of the accident.  Accordingly, it is recommended that this aspect of the petition for writ of *habeas corpus* be denied on the ground that the trial court's evidentiary ruling was not erroneous as a matter of state law and cannot, therefore, constitute error of a constitutional magnitude.  *See Howard v. McGinnis,* 632 F. Supp.2d 253, 266 (W.D.N.Y. 2009) (collecting cases for the proposition that the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional).

**Impartial Jury**

Petitioner argues that he was denied his right to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, by the trial

court's denial of petitioner's motion to vacate his conviction, pursuant to New York

Criminal Procedure Law § 440.10, following allegations that three jurors engaged in

conversation with a prosecution witness during the trial.  Dkt. #1.


The "remedy for allegations of juror partiality is a hearing in which the

defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209,

215 (1982). Pursuant to AEDPA, "a determination of a factual issue made by a State

court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  This presumption of

correctness is particularly important when reviewing the trial court's assessment of

witness credibility and may only be rebutted on *habeas* review by clear and convincing

evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003); *Cotto v. Herbert*, 331

F.3d 217, 233 (2d Cir. 2003).  "A court's determination that a juror is capable of

rendering an impartial verdict is a factual determination involving credibility, and

therefore is granted particular deference." *Patton v. Yount*, 467 U.S. 1025, 1035-37

(1984).


Judge Kloch's determination that there was no improper or prejudicial

conduct to warrant reversal of the conviction cannot be deemed "an unreasonable

determination of the facts" as required for habeas relief pursuant to 28 U.S.C.

§ 2254(d).  Each of the three jurors and the prosecution witness denied engaging in

conversation, while the testimony of Ms. Perrigo and Ms. Fraser was equivocal.  In

addition, petitioner failed to raise the issue of juror partiality for more than six months

despite the fact that the conversation was alleged to have been observed by both

petitioner's wife and a friend of petitioner's who was sitting at the defense table with petitioner and his attorney.  Accordingly, it is recommended that this aspect of the petition for writ of *habeas corpus* be denied.

## **CONCLUSION**

Based on the foregoing, it is recommended that the petition for writ of *habeas corpus* be **DENIED**.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of**

**such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

SO ORDERED.

DATED:      Buffalo, New York
            July 12, 2012


  *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**