UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID M. O'BRIEN,

              Petitioner,

     -vs-

JOSEPH J. COSTELLO, in his official
capacity as Superintendent, Mid-State
Correctional Facility, Marcy, New York,

              Respondent.

**DECISION AND ORDER**

No. 11-CV-0956(MAT)

---

## I. Introduction and Preliminary Matters

David M. O'Brien ("O'Brien" or "Petitioner") filed a pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his September 9, 2009 conviction in Cattaraugus County Court of New York State for Vehicular Manslaughter in the Second Degree, Criminally Negligent Homicide, Driving While Intoxicated; and Driving While Intoxicated Per Se. O'Brien is currently in Respondent's custody serving an aggregate sentence of one to seven years.

By Report and Recommendation ("the R&R") dated July 12, 2012 (Dkt #20), United States Magistrate Judge H. Kenneth Schroeder, Jr. recommended that the Court (Arcara, D.J.) deny the Petition and decline to issue a certificate of appealability. Petitioner filed objections to the R&R (Dkt #25). Respondent filed a response (Dkt #29). Petitioner was directed to reply, or a file a notice of

no reply, due January 15, 2013 (Dkt #28). However, Petitioner did not file any papers by the January 15th due date.

This matter was transferred to the undersigned on January 18, 2013.

For the reasons set forth below, the R&R is accepted and adopted in its entirety. The request for a writ of habeas corpus is denied, and the Petition is dismissed in its entirety.

**II. Factual Background**

For the sake of brevity, the Court will not repeat the factual background of Petitioner's convictions. Instead, the Court refers the parties to the relevant portion of the R&R, which comprehensively recites that factual background.

**III. Standard Applicable to Review of Reports and Recommendations**

When a "specific" objection is made to a portion of a magistrate judge's report and recommendation, the district judge subjects that portion of the report and recommendation to a de novo review. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C); Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002).

When only a general objection is made to a portion of a magistrate judge's report-recommendation, or the objection merely reiterates the same arguments made by the objecting party in its original papers, the district judge subjects that portion of the report and recommendation to only a clear error review. FED. R. CIV. P. 72(b)(2),(3); FED. R. CIV. P. 72(b), Advisory Committee Notes:

1983 Addition. When no objection is made to a portion of a report and recommendation, only "clear error" review is required. FED. R. CIV. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Id.

After conducing the appropriate review, the district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**IV. Analysis**

**A. Petitioner's First Objection (Dkt #25 at 3-4)**

Petitioner objects to the R&R to the extent it states that "Petitioner admits to drinking three or four pints of Yuengling draft beer[,] and the bartenders at Moonwink's recall serving [P]etitioner three pints of Yuengling." Also under the heading of the first "Objection", Petitioner asserts that the R&R "ignored that the Petitioner was a distinguished retired State Police Investigator, 68 years old who on the day of the accident suffered from sleep apnea, regularly drank two pots of coffee each day to stay awake, had undergone a colonoscopy two days before the accident, had laid tile the day of the accident, had worked the night shift the week of the accident, had danced for three hours before the accident, had no recollection of how the accident

happened[.]" (Dkt #25 at 3.) Petitioner, however, has failed to explain how these factors were or are relevant to the question of his level of intoxication at the time he drove his van against the flow of traffic and slammed into the vehicle driven by Wendy Karnes, causing her death.

Petitioner also asserts that the R&R failed to note that "four civilian witnesses at the accident scene (before the police arrived) and two EMT persons testified at trial that the Petitioner was not intoxicated, the nurse and doctor who took his blood at Olean General Hospital testified he was not affected by alcohol. . . ." (Dkt #25 at 4.) However, contrary to Petitioner's suggestion, the R&R did summarize the conflicting impressions offered by the various witnesses who encountered Petitioner after the crash regarding whether he was intoxicated.

Finally, Petitioner states that "he testified that he had less than three beers to drink." Id. However, as Respondent notes, the R&R contains a correct summary of the trial record on this issue: Petitioner testified that he had been drinking Yuengling beer in pint-sized glasses; that he was certain he had consumed three beers; and that he had his last beer before leaving to drive to work at the casino. (Respondent's Exhibit ("Resp't Ex.") A at 1461-63, 1465.) Petitioner also admitted that on the night of the fatal crash, he told a detective that he had drunk "three or four" pints of Yuengling beer. (Id. at 1515.) Several Moonwink's employees

testified that they had served Petitioner three or four pints of beer, and that they had observed him drinking the beer. (Id. at 648-49, 656, 661-62.)

Because Petitioner has not identified any errors in the R&R's recitation of the relevant facts regarding his intoxication, the Court rejects the first objection.

**B.    Petitioner's Second Objection (Dkt #25 at 4-6)**

Petitioner's second objection relates to his claim that the trial court erroneously excluded his proposed character evidence. Petitioner contends that it "escapes reason for the Magistrate [Judge] to conclude 'the potential for confusion of the issue was great as character evidence of Petition's [sic] reputation for sobriety would open the door to testimony regarding Petitioner's proclivities for intoxication, thereby distracting from the central issue, to wit, whether the Petitioner was intoxicated at the time of the accident'." (Dkt #25 at 4; quotation to R&R omitted.) Petitioner contends that "[o]ur criminal jurisprudence demands a defendant's right to present evidence of character regardless of distraction." (Id.)

Contrary to Petitioner's contention, neither state nor federal "criminal jurisprudence" entitles a defendant to present any and all evidence he wishes. As the United States Supreme Court explained in Crane v. Kentucky, 476 U.S. 683 (1986), it has "never questioned the power of States to exclude evidence through the

-5-

application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." Id. at 690 (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). As the Supreme Court noted in Crane, "[i]n any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence[,]" as the trial court here did in O'Brien's case. The Supreme Court has consistently reaffirmed the principle that the United States Constitution "leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" Id. (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (ellipsis and alteration in Crane)).

As explained in the R&R, it was well within the "wide latitude" accorded to trial judges to exclude evidence of Petitioner's alleged "reputation for sobriety". Such evidence was not probative on the issues material to the jury's determination of Petitioner's guilt or innocence and, moreover, it had the potential to mislead and confuse the jury. This Court finds no error in the R&R's disposition of Petitioner's evidentiary claim, and accordingly rejects Petitioner's second objection.

**C.   Petitioner's Third Objection (Dkt #25 at 6-8)**

Petitioner's third objection relates to his claim that the trial court incorrectly resolved his allegations that a prosecution witness, Lucinda Clancy ("Clancy"), had improper contact with several members of the jury. In particular, Petitioner objects to the R&R's finding that the trial judge's "determination that there was no improper or prejudicial conduct to warrant reversal . . . cannot be deemed an unreasonable determination of the facts". (Dkt #25 at 6.) Petitioner also takes issue with the comment in the R&R that "the testimony of Ms. Perrigo and Mrs. Fraser were [sic] equivocal." (Id.) According to Petitioner, his witnesses, Karen Perrigo ("Perrigo") and Catherine Fraser ("Fraser"), were not equivocal in their testimony regarding Clancy's alleged conversation with several jury members.

Contrary to Petitioner's contention, it was not incorrect to describe Perrigo's testimony as equivocal. Perrigo testified that she observed Clancy "smoking and it appeared that they [Clancy and three jurors] were having some type of conversation." (Dkt #8-5 at 253.) Perrigo then retreated somewhat from this statement, testifying that she "saw them standing at the end of the sidewalk together" but could not say "for sure" if they were talking to one another. (Id. at 255.) Fraser, on the other hand, testified that she "was positive" there were three jurors talking with Clancy in the smoking area. (Id. at 263, 268-69.) Thus, Petitioner is correct

that Fraser was not similarly equivocal. Nevertheless, as discussed below, the R&R reached the correct conclusion regarding Petitioner's claim of juror misconduct.

Whether juror misconduct has actually occurred is a factual question. See Remmer v. United States, 347 U.S. 227, 230 (1954) (in a case where possible juror bribery occurred, the Supreme Court instructed the trial judge to "determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a hearing with all interested parties permitted to participate"); accord, e.g., United States v. Vitale, 459 F.3d 190, 197 (2d Cir. 2006); see also Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 813 (2d Cir. 2000) (stating that "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial"). As the R&R explained, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat 1214, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In addition, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted," unless the adjudication of the claim in state court "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).[1]

As the R&R concluded, the trial judge's factual determination was reasonable in light of the testimony presented at the evidentiary hearing. Clancy, the prosecution witness, testified that during a lunch recess, she had seen three women talking. When she saw that one of the women was wearing a juror's badge, she knew it was important to avoid contact with them. She accordingly finished her cigarette and walked away without speaking to them.

All three jurors separately testified that they had not spoken with Clancy at all during the course of the trial.

In contrast, Petitioner presented the testimony of his friends, Perrigo and Fraser, both of whom had observed the jurors and Clancy testify before they testified themselves.

The trial court gave "full credence" to the jurors' testimony that they had no conversation with Clancy or any other prosecution witness. In particular, the trial court noted, one of the jurors indicated that she was not a smoker and testified that she would not want to stand with smokers. The trial court noted that this

---

[1] One commentator has explained that "reading sections 2254(d)(2) and 2254(e)(1) of AEDPA in pari materia leads to the conclusion that section 2254(d)(2) divides 'determination[s] of the facts' into two categories-state court factfindings that are flawed because they are 'unreasonable,' hence are a basis for habeas corpus relief without more; and findings that are not flawed because they are '[ ]reasonable,' hence are presumed to be correct unless the petitioner proves otherwise 'by clear and convincing evidence.'" Liebman, James S. & Randy Hertz, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 20.2c, p. 751 (3d ed. 1998) (quoted in Baker v. Bennett, 235 F. Supp.2d 298, 308 (S.D.N.Y. 2002)).

juror appeared to find smoking repugnant, which leant credence to her testimony that she was not standing with the jurors who were smoking and who Perrigo and Fraser purportedly saw in conversation with Clancy.

Moreover, as the R&R noted, Perrigo and Fraser, being friends of Petitioner's, were not disinterested witnesses. The three jurors, on the other hand, had no interest in the outcome of the case. As the R&R further observed, Petitioner failed to raise the issue of juror misconduct for more than six months, despite the fact that the conversation was alleged to have been observed by Petitioner's wife and one of Petitioner's friends who sat at the defense table throughout the trial. Considering all of the evidence presented, the trial judge plainly was reasonable in determining that the jurors were credible and that no misconduct occurred.

Moreover, Petitioner has not pointed to any clear and convincing evidence sufficient to overcome the presumption of correctness accorded to the judge's findings. Instead, he merely asserts that his witnesses were more credible than the jurors or Clancy. This is insufficient to overcome the high hurdle set by § 2254(e)(1).

**IV. Conclusion**

For the foregoing reasons, the Court agrees with each of the recommendations made by Magistrate Judge Schroeder. As a result, the Court accepts and adopts Magistrate Judge Schroeder's thorough and well-reasoned Report and Recommendation in its entirety.

**V. Orders**

It is hereby **ORDERED** that Magistrate Judge Schroeder's Report and Recommendation (Dkt #20) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the Petition (Dkt #1) in this matter is **DENIED** and **DISMISSED**; and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition as Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: February 4, 2013
Rochester, New York.